IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Montez Little, | ) | C. A. No. 2:09-1334-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Key West Boats, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., 1981, as a result of race discrimination in employment, described variably in the amended complaint (Docket # 21) as separate causes of action for discriminatory discharge and racial harassment, and state law claims of negligent supervision, battery and intentional infliction of emotional distress is before the undersigned magistrate judge for a report and recommendation on the defendant's February 16, 2010 motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on all causes of action. 28 U.S.C. § 636(b).

This action was removed to this court from state court on May 21, 2009. Discovery is closed. After Defendant Key West Boats (Key West) filed its motion for summary judgment, Plaintiff Montez Little (Little) opposed the motion on May 5, 2010. Key West filed a reply on May 12, 2010. Oral argument was had before the undersigned on June 8, 2010.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Speculation is not enough to withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-

12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982). Such bald, unsupported, and conclusory allegations do not constitute evidence and therefore do not create triable issues of fact. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). A plaintiff's beliefs, just like conclusory allegations, speculation, and conjecture are simply insufficient to defeat a properly supported motion for summary judgment. See, Ross v. Communications Satellite Corp., 759 F.2d 355,364 (4th Cir. 1995).

In summary, the plaintiff must present admissible evidence which raises a material and genuine factual dispute. "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

## FACTS

In opposition to the defendant's motion for summary judgment the plaintiff puts forth the following facts in his brief. While the brief summarizes facts and includes conclusory statements[1],

---

[1] Facts include reasonable inferences on behalf of the non-moving party, but conclusory allegations, such as the statement, "Plaintiff endured unlawful racial discrimination and

3

the facts in the brief represent the best case from the plaintiff's point of view, and to the extent the facts are supported by the evidence or are undisputed, they must be taken as true for the purposes of this motion:

> Plaintiff was employed by Defendant on March 8, 2006. Plaintiff's performance on the job was satisfactory and he received multiple pay increases. Despite the pay increases, Plaintiff endured unlawful racial discrimination and harassment. On August 15, 2007. Defendant's racial harassment ended when Defendant's employee, Walter Renken (Renken), committed a battery upon Plaintiff by offensively grabbing and jerking Plaintiff around. (Plaintiff"s Deposition at 77-79, 97.)
> Defendant's harassment of Plaintiff began three months after Plaintiff became employed with Defendant. Specifically Renken would without explanation repeatedly interrupt Plaintiff while he worked. Further, although Plaintiff was authorized to take breaks during the work day by Jessie Wilson (Wilson) his immediate supervisor, Renken would cut Plaintiff's breaks short and ordered him to return to work. Additional harassment included Renken speaking in a demeaning manner to Plaintiff and participating in conversations with other employees about Plaintiff. Renken also made jokes about Plaintiff being gay. (Plaintiff's Deposition at 55-57). Plaintiff reported Renken's conduct to his immediate supervisor, Wilson. However Wilson neither explained Renken's behavior to Plaintiff, nor did Wilson report Renken's conduct to other senior management.
> A striking example of the disparate treatment Plaintiff was subjected to while in Defendant's employ happened on or about January 8, 2007. Plaintiff requested that he be permitted to leave work by 2:30 pm on January 23, 2007. Wilson

---

harassment" do not constitute evidence and have not been considered as evidence by the court in reviewing the pending motion.

approved Plaintiff's request and posted notice on
Defendant's bulletin board that Plaintiff would be
leaving by 2:30 pm on January 23, 2007. On
January 23, Plaintiff reminded his supervisor that
he would be leaving early on that day. However,
later that day Wilson, and without prior notice
withdrew his consent and ordered Plaintiff to
remain at work, even though he had already
approved Plaintiff's request to leave early.
Plaintiff, informed Wilson that he could stay
until 4:30 pm, 2 (two) hours beyond his previous
approved request. Plaintiff left work at 4:30 pm.
Although Plaintiff's request to leave work early
was approved, Defendant reprimanded Plaintiff by
issuing Plaintiff an Employee Warning Report. (See
Plaintiff's Affidavit - Exhibit E). Plaintiff
observed no white employees treated similarl[y]
When the Plaintiff was traveling to work on August
8, 2007 his car got a flat tire. Plaintiff
phoned Wilson and told him about the flat tire and
that he would be in as soon as the tire was
repaired.
Although Wilson told him "Okay", but when
Plaintiff arrived to work Wilson sent him home for
being late. (See Plaintiff's Affidavit - Exhibit
E). Again, Plaintiff observed no white employees
subjected to such arbitrary discipline.
On August 15, 2007, Plaintiff was returning to his
work area and saw another employee, named
Darren Wilson (Darren). Darren asked him about
the time for lunch. Renken walked behind
Plaintiff and started asking Darren whether
something was wrong. Darren responded that he and
Plaintiff were talking about the time for lunch.
Renken then stated that you go to lunch at 12
o'clock. Upon hearing Renken's statement, to
Darren, Plaintiff walked away inasmuch as Renken
was speaking to Darren and not Plaintiff. After
Plaintiff walked away Renken followed Plaintiff
and offensively grabbed Plaintiff's left arm and
swung Plaintiff around to face him. After
swinging Plaintiff around, Renken asked Plaintiff
if there was a problem. Plaintiff immediately
replied, "You don't have to grab me to speak to
me." Renken then fired Plaintiff. (Plaintiff 's
Deposition at 97).
On August 16, Plaintiff filed an assault charge
against Renken at the Dorchester County

> Sheriff's office. (Plaintiff 's - Exhibit D). At
> a hearing on the charges, Plaintiff's witnesses,
> Selwyn and Llewellyn Edwards failed to appear
> because Defendant required them to work at the
> time of the hearing. Thereupon the assault charge
> against Renken was dismissed.

Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment (Docket # 50, Pg. 1-3).[2]

In its motion Key West notes the following additional facts which are uncontradicted. See, Defendant's Memorandum of Law in Support of Motion for Summary Judgment Docket # 36, pgs. 3-9.

Prior to his termination on August 15, 2007, Little never made a complaint to any representative of Key West, or anyone else, that he believed he was subjected to race discrimination by Key West or any of its employees.[3] (Docket #36, Exhibit 2, Pg. 110 et seq., Plaintiff's deposition.)

---

[2] Little filed an affidavit in opposition to the motion for summary judgment which avers he was late on August 7, 2007 because of a flat tire. In his sworn EEO charge he asserts he was late because he could not get a baby sitter. Key West urges that the affidavit be disregarded because it is in conflict with his deposition and the EEO charge, and because it includes hearsay concerning why the criminal charge was dismissed.

[3] Little deposed he did not really report anything but rather asked Wilson, "Why is it that Mr. Renken constantly follows me around and stuff and cuts my break when I already got the okay from him to be doing what I'm doing?" (Pl. Dep. Pg 56-57). Little never said anything else to anyone at Key West, and "just brushed it off" because he needed his job. Id. He admits no one ever threatened or intimidated him or did anything to discourage him from reporting harassment. (Pl. Dep. Pgs 57-58, 64).

Renken made the decision to hire Little in March 2006 after the single interview. Little did not interview for a position at Key West with any other Key West representative. Little began working for Key West on March 28, 2006. His starting pay was $8.00 per hour and was given two raises to $11.00 per hour, both raises were approved by Renken. The decision to fire Little was made by Renken.

Little was assigned to work within the main manufacturing area of Key West's manufacturing facility in Summerville, South Carolina. On his first day working for Key West, Key West provided Little with a copy of its employee handbook. Key West's employee handbook contains specific provisions addressing the following: equal employment opportunity; harassment; complaint procedure; work rules and disciplinary procedures, including those related to insubordination; and, discharge. Additionally, Key West provided, and Little acknowledged receipt of, a separate disclosure related to Key West's harassment policy.

During his employment with Key West Little was issued three employee warning reports. Renken was aware of the warning reports on August 15, 2007, at which time he and Little had an encounter which Renken felt was insubordination and warranted discharge. (Docket # 38, Exhibit 2).

Little filed a Charge of Discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC") and the Equal

Employment Commission ("EEOC") on or about September 14, 2007. Little's Charge was specifically limited to the event on August 7, 2007, when the plaintiff reported late for work and was told to go home for the day and an Employee Warning Letter was issued, and the encounter with Renken on August 15, 2007, which resulted in Little's being discharged. The allegations in his Charge are specifically limited to his allegedly being treated differently in regard to employee discipline as compared to white employees of Key West. (Docket # 36 pg. 16, Docket #38, Exhibit 3).

## RACE DISCRIMINATION IN EMPLOYMENT LAW

Title VII provides that "[i]t shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ..." Green v. Clarendon County School Dis. Three, 923 F.Supp. 829, 840 (D.S.C. 1996)(citing Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e-2(a) (1994)). Furthermore, "an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Title VII was fashioned "'to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identified group of white employees over other employees....'" Albemarle Paper Co. v. Moody, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 429-30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)).

Under the disparate treatment scenario of employment discrimination, as here, a plaintiff must demonstrate that the "employer ... treats some people less favorably than others because of their ... [race] ...." International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

In 1999, the Fourth Circuit reiterated that there are two avenues of proof by which an aggrieved employee can prove a disparate treatment Title VII violation. Brinkley v. Harbour Recreation Club, 180 F.3d 598 at 606-607 (4th Cir. 1999). First, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992). To overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue

9

of material fact." Goldberg v. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). "What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

When such direct evidence is lacking, the plaintiff may nevertheless proceed under the McDonnell Douglas burden shifting proof scheme. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see, Tuck, 973 F.2d at 374.

The McDonnell Douglas standard allocates the burdens of proof. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). Under this standard, the plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination: that he belongs to a minority, that he was performing his work at a level which met his employer's reasonable expectations, and that he suffered an adverse employment action under circumstances which could indicate race was not treated neutrally.

Once the plaintiff meets the initial burden, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. This pretext analysis does not convert Title VII into a vehicle for challenging unfair-but nondiscriminatory-employment decisions.

10

See, Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989). Thereafter the complaining party must demonstrate that race was a motivating factor for the employment practice.

Title VII also prohibits an employer from subjecting an employee to a hostile work environment because of race. In order to state a hostile work environment claim, a plaintiff must allege that the harassment was based on his race and that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005). In other words, in order to demonstrate that he was subjected to a hostile work environment, Plaintiff must demonstrate that: "(1) he experienced unwelcome harassment; (2) the harassment was based on his race ...; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that she "subjectively perceive[d] the environment to be abusive." Harris

v. Forklift Systems, Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

If there has been actionable harassment, an employer is not liable for Title VII harassment where: (a) "the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) ... the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

## DISCUSSION

Here the plaintiff's claim fails because of an apparent failure to exhaust administrative remedies, the absence of any direct evidence of discrimination or that race played a role in the events in issue, an inability to establish a *prima facie* case, a lack of any evidence showing the non-discriminatory basis given by the defendant for its conduct is pretextual, a lack of evidence of any white employee being treated differently than the

plaintiff, and the absence of any showing the plaintiff took advantage of any preventive or corrective opportunities provided by the employer.

Although Key West asserts in its Memorandum that Little failed to exhaust his administrative remedies as to this claim, Little does not contest Key West's assertion in his Response. To the extent that Little's claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505, 508 (4th Cir. 2005), *quoting* <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995). "'The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint'" *Id.*, *quoting* <u>Evans v. Techs. Applications & Service Co.</u>, 80 F.3d 954, 962-63 (4th Cir. 1996). The only issues raised in the EEOC charge are the employee warning for arriving late to work on August 7, 2007, and his discharge little more than a week later on August 15, 2007. Any other events and charges arising from them are not administratively exhausted and thus barred.

The plaintiff alleges that the discipline and subsequent discharge, as well as his unexhausted claims, constituted racial discrimination and harassment because of race. The plaintiff fails, however, to make a sufficient showing to establish the

13

existence of an element essential to the plaintiff's case and on which the plaintiff bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). Specifically the plaintiff's allegations of racial discrimination are unsupported by any evidence of race based animas and are merely conclusory. Likewise plaintiff's testimony that "[t]o my knowledge no other white employee was help (sic) responsible for similar situations," (Plaintiff's Affidavit Docket #50 Exhibit 5) is equally inadequate to require a jury to resolve the issue.

The plaintiff presents no direct evidence of discrimination.

Alternatively the plaintiff could survive summary judgment by meeting the McDonnell Douglas burden shifting proof scheme. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this standard, the plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination: that he belongs to a minority, that he was performing his work at a level which met his employer's reasonable expectations, and that he suffered an adverse employment action under circumstances which could indicate race was not treated neutrally.

Although the plaintiff belongs to a protected class and there is some evidence that he performed his work in a satisfactory manner, there is no evidence that he suffered an adverse employment action under circumstances which could

indicate race was not treated neutrally.

The evidence concerning the plaintiff's work performance is undisputed but does not show by a preponderance that he was meeting his employer's reasonable expectations. On the one hand, he was given three employee warnings and was discharged following an altercation with his boss in which race was not implicated. On the other, he received two pay raises while he was employed which is an indication he was meeting the employers expectations.

The plaintiff's *prima facie* claim is additionally lacking because there is no evidence that after the plaintiff was discharged the position remained open or that he was replaced by someone outside of the protected class. By brief the plaintiff points to no such evidence and simply recites the law and concludes he has a prima facie case. To be sure with regard to his blended claim of harassment, the plaintiff cites incidents which he characterized as, "unwelcome conduct based on race," (i.e. being spoken to in an unprofessional manner, having his gender orientation questioned, being interrupted during breaks, and being criticized), there is no evidence the events were racially motivated. Nor is there any evidence the plaintiff attempted to avail himself of employer available procedures to correct or prevent the alleged harassment. Likewise the plaintiff's lack of knowledge concerning how white employees were treated does not create a material and genuine issue for trial.

Finally there is no evidence that brings into dispute whether the asserted reason for the plaintiff's discharge is pretextual for race discrimination. While the plaintiff's and defendant's versions of the altercation which resulted in the plaintiff's discharge differ as to who was in the wrong, neither version implicates race. Renken, the person who interviewed the plaintiff initially, who hired him, who approved his pay raises and subsequently fired him, perceived the plaintiff's conduct as insubordinate. There is no evidence that the plaintiff was discharged for any other reason or that race was a motivating factor for the employment decision. As noted this analysis is not intended to convert Title VII into a vehicle for challenging unfair-but nondiscriminatory-employment decisions. See, Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989).

Accordingly, it is recommended that the plainitff's Title VII claims whether characterized as discriminatory discharge or racial harassment be dismissed.

## STATE LAW CLAIMS

This court may exercise supplemental jurisdiction over state law claims brought in conjunction with federal claims even though those state law claims could not have been brought by themselves. 28 U.S.C. § 1367. However 28 U.S.C. § 1367(c) gives the courts substantial discretion to refuse to hear supplemental claims. One of the most common instances in which the court declines to

hear supplemental claims is the instance in which the original federal claims have been dismissed. In such a case the supplemental claims are dismissed without prejudice.

Therefore it is recommended the court dismiss the supplemental claims herein without prejudice.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment on the Title VII claims of race discrimination and harassment be granted, that the court decline to exercise supplemental jurisdiction over the pending state claims and that they be dismissed them without prejudice, and that this action be ended.

Respectfully Submitted,

*Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
December 10, 2010

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).